Good morning and may it please the court. Eleodoro Moreno Jr. for the petitioner, Sergio Arreola-Arreola. The BIA in this case erred in holding that Mr. Cardenas did not render ineffective assistance of counsel and also erred in failing to consider the merits of petitioner's arguments regarding equitable tolling regarding VBN's IAC based on the board's legally erroneous reliance on this court's inapposite Balamchuk decision. Thus, this court must reverse and remand to the board. The BIA erred in holding Mr. Cardenas did not commit IAC because in spite of matter of Magallanes, which of course held that petitioner's DUI conviction was an aggravated felony, any competent appellate litigator would have appealed when it was an open question in this circuit. In October of 1998, no Ninth Circuit precedent existed which held that felony DUI with priors, which can be committed through mere negligence, was an aggravated felony crime of violence. Sotomayor, did the lawyer at the time tell him that an appeal would be fruitless or that he could not appeal, that an appeal was not available? Do you understand the distinction? Yes. And he told him that an appeal was not available, Your Honor, as well as that it would be fruitless on that basis. Well, it seemed to me like what he said was that he stood little chance on appeal in the BIA or in the immigration and that he couldn't appeal to the Ninth Circuit. That seemed to be what he said, right? That is correct, Your Honor. Well, he couldn't appeal to the Ninth Circuit, could he? He could, Your Honor. Well, he could if he went to the BIA first, but that's what he was – that's why he said he couldn't come up here. He said the whole of this was to get him out of jail, and he couldn't go directly to the Ninth Circuit, could he? He couldn't go directly to the Ninth Circuit, Your Honor, but he could. So therefore, he couldn't go directly to the Ninth Circuit, he couldn't appeal directly, but he had to go to the BIA, and he stood little chance there. So why is he wrong? Well, he was wrong, Your Honor, because if the BIA were to affirm the IJ's decision, then he can appeal to this circuit where it was an open question. Well, I understand that, but that isn't what he was being asked about. He wanted to get out of jail, didn't he? Wasn't the question all in the circumstance that he was going to jail? He did not want to be in jail. He wanted to get out as quickly as he could. And so he asked counsel what he could do, and the first thing counsel said was, well, you got a little chance in the BIA because that's just not going to happen, and you can't go to the Ninth Circuit at this point. That seems obvious, he can't go to the Ninth Circuit at this point. Your Honor, first to the point of whether he wanted to get out of jail, there's nothing in the record that supports that he preferred to get out of jail over appealing his case. His main priority was to appeal to remain in the United States because he had been here since he was 1 years old. I understand your argument, Counselor, and I'm not trying to take away the argument, but I have to put it in the circumstance in which it was given. He was going to jail. He did not want to go to jail. And, yes, he would like to appeal, but he wanted to get out of jail. And the bottom line was that at that point, counsel says, well, you got a little chance in the BIA, and you can't go to the Ninth Circuit right now. He didn't say right now. I added that. But he could not appeal directly to the Ninth Circuit at that point. So I'm trying to find a tough reason why that's bad. That's exactly what one would tell him, isn't it? No, Your Honor, because they could appeal to the Ninth Circuit. They couldn't appeal to the Ninth Circuit. Not directly, Your Honor, but they could after the BIA affirmed I.J.'s decision. He could definitely appeal to the Ninth Circuit. Well, therefore, you're reading in to the situation. I'm just trying to figure out if, in fact, really this is a problem. And if it is, how are you going to get there? The only way I know, maybe I'll give you a little help, the only way I know to get around what I have suggested to you is that the BIA never reached that issue, did they? No, they did not reach that issue, Your Honor. So I'm giving you a little out. But honest to truth, he told him exactly the truth. It's just that the BIA didn't get there. We would disagree with the phrasing of Your Honor regarding what Mr. Cárdenas advised Mr. Arriola. You wouldn't disagree, would you, that counsel was correct, that he would have little chance with the BIA? Absolutely, Your Honor. And, frankly, that was addressed, and addressed as it would have been addressed in that time period. Then we come with a different time period, and we have more law on the books, and now you could go up. So all you're suggesting is, based on what was said about the Ninth Circuit at the time, he really had to go the BIA first. I should find that wrong. That is bad counsel. That's what you're telling me? Yes, yes. Well, Your Honor, we're saying that Mr. Cárdenas suggesting that an appeal would have been fruitless was ineffective assistance of counsel, because whether his conviction was an aggravated felony was an open question before this Court. Now, the Court is trying to make a dis – trying to distinguish whether he can appeal directly to the Ninth or not, and that if Mr. Cárdenas would have counseled that, he would have been correct. But that's not what Mr. Cárdenas counseled. Nowhere in the Petitioner's declaration does he state that. Here he said that … As long as we're talking about practicalities, my understanding is that new counsel, it may well have been you, obtained the vacatur of the two existing removal orders, correct? That is correct, Your Honor. Was that you? Yes, it was. And that the petition to reopen, the motion to reopen, was filed within 90 days of the vacatur of the second removal order, correct? It was the vacatur of the first one, but it was the second one to be vacated. So the first one that was vacated was the second reinstatement from 2012, and then after that, in September of 2012, they vacated the original 2000 reinstatement order. And why wasn't it timely? Well, Your Honor, our argument is that it was timely, because it was the … Has any circuit said that? Excuse me, Your Honor? Has any circuit said that if an individual obtains a vacatur of a removal order and files within 90 days of the vacation of that order, that that's timely? Your Honor, no. No court has said that. First, the BIA didn't consider whether VBN's IAC and thus until which date equitable tolling applies, they didn't consider that in their decision. Did they consider this point, the point I'm talking with you about right now? No, they did not, Your Honor. The only thing that the BIA considered is whether Mr. Cardenas rendered IAC. And as Justice Smith stated, they only considered that on one of the points here, which is … I think we would all love it if Judge Smith were Justice Smith, but he's a judge like the rest of us. Yes. Thank you, Your Honor. I'm just a judge. No justice in the Ninth Circuit. Thank you, Your Honor. And so getting back to the court's question, there is no case that has held that after a vacatur of a reinstatement order, that's until when equitable tolling applies. But the courts and the BIA has constantly held that when there's IAC after removal proceedings, then that goes into the calculus of until when equitable tolling applies and thus when the 90-day period to file that motion to reopen starts. And our argument is that due to VBN's IAC, that should be tolled up until the vacatur of the reinstatement order. I understand that argument. Yes, Your Honor. Let's just assume hypothetically an individual has been removed.  He's back in Honduras. Yes, Your Honor. And he communicates by e-mail with the lawyer, and the lawyer obtains the vacatur of the existing removal order, and the lawyer then files a motion to reopen before the board within 90 days. Why isn't that timely? It is timely, Your Honor. With equitable tolling? No consideration of equitable tolling. Just it gets removed, and 90 days later the Petitioner files. Well, Your Honor, the Court stated that the Petitioner's already outside of the country. He would have had to have reentered allegedly illegally in order for the reinstatement order to have been reinstated. So that's presuming that he then exited the country again. Let's have that hypothetical. Why isn't filing within 90 days of the vacatur of a removal order timely? It is timely, Your Honor. Because he couldn't have filed it prior to that. And also, in this particular case. Thank you. You've answered the question. Thank you, Your Honor. I'll repeat it to your opponent. If I agree with you on the first issue, do I have to reach the second? The only second issue is did the BIA err in declining to reopen Suis Ponte? No, Your Honor. If I agree with you as to the first, that the BIA erred in denying the plaintiff's motion to reopen as untimely, then it doesn't seem to me I have to get to the second, do I? Well, Your Honor, the Court would have to get to the second one. Because here the only issue before the Court as to the first issue is Mr. Cardenas' IAC. And if the Court would remand, the Court still has to determine whether equitable tolling applies and until which date. And if the MTR was timely. So, thus, it could still be significant whether the motion to reopen Suis Ponte was denied erroneously or not. Well, if I have to get to the Suis Ponte reopening, then I haven't any jurisdiction there unless it's a constitutional error or legal error, right? We would agree with that, Your Honor, yes. And exceptional circumstances need to exist, right? Yes, Your Honor. So why is holding that exceptional circumstances do not exist a constitutional or legal error? Your Honor, upon examination Is that a matter of discretion? Yes, Your Honor. And so, therefore, it isn't constitutional error or legal error and, therefore, you lose. Yes, we would concede that point on the Suis Ponte reopening, Your Honor. We believe the BIA said enough in its decision on that point. Okay. All right. Thank you very much. Thank you. May it please the Court, Your Honor. Happy to stand to you on behalf of the Respondent and Attorney General. Your Honors, we would ask the Court to affirm the petition for review and argue that neither. Actually, what we do is either deny or grant the petition. Okay. If you've argued these before, you should surely know that. Yes, Your Honor. We would ask the Court to deny the petition for review and find that neither of the Petitioner's prior counsels were ineffective. What's your response to my question? A couple of responses, Your Honor. First of all, that argument was not made before the Board, so it's waived under the statutory exhaustion provision of the Immigration and Nationality Act, which is jurisdictional. That argument is waived. But, number two, that motion to reopen could have been filed earlier because the fact that he was out of the country does not necessarily preclude him from filing a motion to reopen. He had illegally reentered the country at that time and did try to file a motion to reopen, in fact, earlier by prior counsel, and that was denied because of the reinstatement. But at the time he did not. Correct? Correct, Your Honor. So at the time he moved to reopen, there was no order of removal. That's incorrect, Your Honor. Well, I'm sorry. Let me change that. That is correct. There was no order of removal and, in fact, there is no order of removal right now. And, in fact, unlike most people, most Petitioners we find in this circumstance, he remained in his home country, correct? He did not. He came back immediately. The Petitioner came back within one week, according to him. And that's what caused the reissuance of the removal order. And that's what's called the reinstatement of the removal order. That's right. So he took the law into his own hands, decided to come back into the country, and that created his own set of problems at that point. But is there any order of removal pending? At this time, no. He's in removal proceedings, and those proceedings have been administratively closed pending this litigation. But I would say, Your Honor, that at this point he's not removable until he's in removal proceedings. So those proceedings are ongoing. If there's no final order of removal, what jurisdiction do we have? The Court can continue to review the denial of the motion to reopen, which is independent from the removal proceedings. And, in fact, Petitioner's counsel is the one who asked the immigration court to hold the case pending the current litigation. DHS actually opposed that motion. So the Petitioner has asked the current removal proceedings to be held pending this litigation. And I would say that, Your Honor, that this argument about the first counsel's ineffectiveness, I think, is clearly unpersuasive in light of the fact that what was happening here was he was clearly looking to get out of immigration detention. That is clear from the record. He, in fact --" Sotomayor, does he say that? He does not say that directly, but he says that he wants to get out, and he says that numerous times. He, in fact, took his own appeal on his own. He appealed his bond determination to the board. He also has requested bonds several times before the immigration judge. I would point the Court to the administrative record at 499, where he decided to appeal the bond denial, quote, on his own, is his own words. The administrative record at 129, on two separate occasions he requested bond. Administrative record at 563 shows the letter requesting the second bond reduction. And he admits on page 129 of the administrative record that about a week after I was removed, he reentered. So from this, I think the board, and the board did reach this issue, Your Honor, when it found that this was a tactical decision. Let me see if I understand the government's position. Your position is that the first lawyer was not incompetent? That's correct. It was not ineffective. That's right. Not ineffective in any way. That's correct, Your Honor. By advising the Petitioner in this case not to pursue further remedies given his DUI conviction, correct? The Petitioner was advised to. Can you answer that with a yes or no? Well, the Petitioner was advised to. That's the advice that he gave, that you have no avenue of relief, correct? His own declaration says that there was very little that he could help him with on his appeal. Is that correct? Yes, there was very little that he could help him with. All you have to do is say yes or no. If the answer is no, tell me why it's no. But the answer is yes, isn't it? That there was very little that he could help him with on his appeal. Okay. And that's the appeal to the board. That's right. Then he hires this gentleman, who not only gives him correct advice, he convinces immigration authorities to vacate the two prior orders of removal. Was that competent advice? Now we're talking about current counsel. Yes. Was his advice competent? It wasn't. It was not. I would not deem that advice ineffective. It was not ineffective. That's right. It was obviously effective because he obtained vacation of the removal orders, correct? That is correct. Yet the government's here arguing that the lawyer who gave the opposite advice was not incompetent, not ineffective. We're arguing. I just want to understand your position. Yes, that's right. We're arguing that the conduct did not rise to the level of egregiousness, which is the required standard for ineffective assistance of counsel. So in a criminal setting, if I get convicted of first-degree murder and sentenced to death, and my lawyer says don't raise the question of DNA on appeal, and I fire the lawyer and hire a new lawyer, and on appeal the lawyer gets a new trial and DNA proves that I could not have committed the crime, the first advice is not ineffective? No, that's not what I'm saying. That's a whole different set of facts. This decision, this advice has to be considered in the entire context of the situation. Our brief sets out that not only was the Petitioner seemingly wanting to get out of detention, and this seemed to be a tactical issue. It was acting on the advice of counsel. And the counsel's advice was you have no opportunity or avenue of relief. Your Honor, I think we need to also consider the case law at that time that led into this decision. But I guess, I mean, if we get past the questions that Judge Hawkins is asking, it does seem to me that the BIA concentrates on how much success there would have been either at the BIA or on the Ninth Circuit. But it doesn't seem to me that that's your argument. Your argument is that it's jurisdictional, and therefore it wouldn't be something that the Ninth Circuit would hear. But the BIA never talked about that. If you're referring to the motion to reopen in light of the rescission of the reinstatement order. Right. I am. That issue was not raised before the Board. So under AUSC 1252d-1, statutory exhaustion, that's not before this Court. So the argument that was made was that because he said that there was very little that he could help with the Petitioner's Appeal, that that was essentially that was ineffective sensitive counsel. And I want to remind the Court of the case law at that time. Not only was the ---- Well, I know what the case law was at that time. Well. But the problem that I have with your argument is it seems to me that the argument is pretty good about there's little chance in front of the BIA. But it doesn't the BIA doesn't address the argument I thought you made in your brief about jurisdiction is the reason the Ninth Circuit shouldn't have got it. I don't think the BIA ever addressed that. So I said again to myself, my questions to counsel I don't think the BIA ever considered. I don't think they considered your argument to me about why that was good counsel. Your Honor, I'm not sure I understand the jurisdictional argument we made. We did make a jurisdictional argument with respect to the second counsel. And the Board did talk about that in Footnote 3. Okay. So now if we're talking about the jurisdictional argument we made in our briefs, it was with respect to the second counsel, VBN. They're trying to argue, the Petitioner's trying to argue that VBN rendered ineffective assistance by not making an argument that has been clearly foreclosed by this circuit. And the Board cites to that in Footnote 3 the Tamayo-Tamayo case. We argued as we made several arguments with regard to arguing that VBN was not ineffective, including the fact that the issue is moot because the claim was that was complaining about the reinstatement order was, as Judge Hawkins has noted, that order is vacated. So that issue has gone away. Plus, it's essentially frivolous on the merits now, given the circuit's control in case law. But we would ask the Court to affirm, I think, particularly on the first counsel. Kennedy, then I petition, not affirm. Thank you very much. All right. The case of Areola-Areola v. Sessions is submitted. You have exhausted your time. And we'll go to the next case. United States v. Clifton is submitted on the brief. So the next case for argument is United States v. Eduardo Vazquez-Durazo.
judges: Hawkins, Bea, N.R. Smith